[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter, initiated by writ and complaint dated June 5, 2000, in which the plaintiff, Murray Renshaw, alleges that the City of New London acting by and through the New London Development Corporation has condemned his property in the City of New London. Prior to that time on May 17, 2000, the City of New London filed with the clerk of the Superior Court a statement of compensation in which it set forth its description of the four parcels of property involved and its determination as to the compensation appropriate to be paid.
Thereafter, on May 24, 2001, the parties entered into an AGREEMENT RE: MEDIATION (Court Exhibit 1) which set forth a procedure by which the parties agreed they would submit their claims with regard to the fair market value of the properties as of the date of taking providing for appraisals, argument of the parties and "a written report setting forth his opinion of the fair market value of the properties as of the date of taking and the reasons therefore the details sufficient to enable the parties to determine considerations upon which he based his conclusions" by the undersigned.
The Agreement also provides for the court to forward, through Justice Santaniello, a report with regard to the same which will thereafter be transmitted to the parties.
The Agreement further provides for an arrangement by which the fair market value may be thereafter adjusted and paid over. The Agreement then CT Page 14525 provides that upon the receipt of the payment the within appeal shall be withdrawn and the matter shall be terminated.
Accordingly, it is the purpose of this memorandum to provide the "written report with sufficient details to enable the parties to determine the basis for the conclusions reached."
The parties have each filed two appraisals which have been marked as Court Exhibits 2, 3, 4 and 5.
The property is in four parcels generally described as 230 Shaw Street, 232 Shaw Street 243 Howard Street and Harris Street which are shown on various maps included as part of the appraisal material and located generally at the confluence of Pequot Avenue, Trumbull Street, Walbach Street, Shaw Street and Willetts Avenue. The plaintiff has presented the appraisals of Kevin E. Bill (Court Exhibit 2) and Marc P. Nadeau (Court Exhibit 3). The defendant has presented the appraisals of flanagan Associates (Court Exhibit 4) and Minor Silverstein Appraisal Company (Court Exhibit 5).
In gross terms, the appraisals are at considerable variance with the appraisal of Mr. Bill totaling $600,000.00, Mr. Nadeau totaling $578,000.00 on the one hand and the City of New London's appraisers flanagan Associates totaling $289,000.00 and Minor and Silverstein totaling $334,000.00. All appraisers are found to be highly qualified and have fully presented their respective methods by which they have arrived at the above opinions.
In determining the fair market value of the properties as of the date of taking, the court will utilize the Connecticut law as most recently set forth by our Supreme Court in the case of Commissioner ofTransportation v. Towpath Associates, 255 Conn. 529 which requires a determination as to the highest and best use of the properties at the time of the taking as well and whether there was a reasonable probability that in the reasonably near future the subject property would be put to that use, it also being determined that the question of what is appropriate is an "equitable" determination rather than a strictly legal or technical one.
From the point of view of fair market value, both parties acknowledge that perhaps the most significant factor with regard to the four contiguous parcels of land relates to their location. This is described in some detail at page 30 of the Flanagan appraisal (Court Exhibit 4) which sets for the following description: "There are a number of proposed changes to the neighborhood in the immediate vicinity of subject property. These changes have been prompted by the December 1997 CT Page 14526 announcement of Pfizer, Inc.'s decision to develop the former New London mills site south of subject neighborhood with a 400,000 +/- square foot research facility. The State of Connecticut, the City of New London and a non-profit quasi-public group known as the New London Development Corporation, are using this development as a catalyst to rehabilitate this section of New London. Much of the area has been included in a Municipal Development Plan that includes the acquisition and reuse of over 100 neighborhood properties. Sections of the former Underwater Systems Center (The Sound Lab), that was scheduled for disposition by the federal governments in early 1999 is also part of the reuse plan. A section of this base not included in the plan will be turned into a park by the State of Connecticut. It will surround a revolutionary era stone fort (Fort Trumbull) that is located on site. Infrastructure improvements to roadways and the City of New London sewer filtration plant located within the neighborhood are also planned.
Pfizer has been active in acquiring certain properties around the proposed plant site. These properties and the plant site are not included in the Municipal Development plan area."
The Minor Silverstein appraisal (Court Exhibit 5) discusses the significant aspects of the location in its report at pages 9, 10 and 11 which also identifies a commitment by the State of Connecticut to invest in the nearby state park and various infrastructure activities. Mr. Nadeau, in his report (Court Exhibit 3), discusses the significance of the location at page 19 with emphasis on the "enterprise zone with development incentives and the activities of the Pfizer Corporation" suggesting that the property values changed as a result of that activity. Kevin Bill, in his appraisal (Court Exhibit 2), points out the significance of the Pfizer Pharmaceutical activities at page 7 of his report stating that "Pfizer Pharmaceutical is building a $270 million dollar office complex on Pequot Avenue. This 790, 000 square foot building will be Pfizer's central research division world headquarters and employ an estimate 2,000 employees.
"The subject property is located 250 feet north of the Pfizer project. The current and anticipated enhancement of the quality of life in this neighborhood has had a direct positive effect on real estate values in this neighborhood . . ."
While agreeing that this special location is important, the significant differences between the various appraisals, as pointed out by the arguments of the parties, appears to relate whether or not recent purchases by Pfizer in the general area should be included in the data analyzed in the sales comparison approach and secondly, whether the appraisals should be based on vacant land or as improved. CT Page 14527
While the various appraisal and the arguments of the parties have set forth their reasoning in some detail, for this purpose, suffice it to say, that the court is more convinced by the arguments of the plaintiff and the appraisal of Mark P. Nadeau (Court Exhibit 3) with regard to the answer to these questions and ultimately to the value of the property of the plaintiff taken by the New London Development Authority.
The recent activities in the general location of this property includes the Pfizer acquisitions for the very reasons underlying these changes.
The court finds that the Pfizer property acquisitions are appropriate to be included and, therefore, adopts as the fair market value at the time of the taking the following values:
Harris Street $156,000
230 Shaw Street $105,000
232 Shaw Street $121,000
243 Howard Street $196,000
As a statement of the reasons for this conclusion with details sufficient to enable the parties to understand the same, the court adopts the appraisal analysis of Mark P. Nadeau (Court Exhibit 3).
Judgment shall enter accordingly.
Leuba, J.